Show Appearance of the Appellant William Sunderman and Appearance of the Appellee J. Ferguson. Are you, sir? Right. Okay, Mr. Sunderman, you may proceed, sir.  Pleased to call you, Mr. Ferguson. Counselor. I'm Tony Sunderman. I'm a lawyer from Charleston, Illinois, and here on behalf of Dr. Philip Jensen. I have to apologize because I didn't have the privilege of trying the case. I didn't have the privilege of writing the briefs. I didn't have the privilege of seeing the record. And that said, I'm okay with that. And in this circumstance, and that is, when you read the transcripts, when you look at the decisions that were made, the actions of the trial court support the position we take in the court before you today. And that is this. First of all, I notice our brief doesn't talk about the standard of proof or the standard on review, and it should have. Let me suggest to you that the standard of review is abuse of discretion. But there's a twist. We have a de novo issue of law that I can't find having been addressed anywhere. And that is the issue of dissipation, and I'll get to that in a minute. First of all, the trial court considered substantial evidence, considerable testimony, a number of exhibits, and rendered an opinion that was incorporated in an order in August of 2011. That order divvied up approximately $960,000 worth of marital assets, and it did so by allocating $471,000 of them to Mrs. Denson and $469,490 to Dr. Denson. It was essentially a 50-50 split right down the road. Thereafter, a motion for reconsideration was filed. And that motion asked, one, that the court reconsider or consider and address the issue of dissipation of assets. Second of all, it requested a clarification of some issues relating to major medical and hospital insurance and who was to pay how much. Third, child support, which isn't an issue here. Fourth, the re-evaluation of a piece of marital property, which was an old Ford Mustang. That's not an issue. Re-evaluation of household furnishings. That's not an issue. The court took the matter under advisement. And it's important to remember, no more testimony taken. There were no more exhibits offered. The court simply took the matter up again and concluded, first of all, that the marital estate should be divided, not 50-50, but 55 to Mrs. Jenkins and 45 to Dr. Jensen. It's only a 10% spread, but we're talking about nearly a million dollars' worth of assets. It did that reallocation principally by shifting money from one IRA to another. Then the court took up the issue of dissipation of assets. And it found the dissipation of $16,156, I think it was, of marital assets. Counsel, $14,156.94. Thank you. But who's counting? Who's counting? At this stage, we're not million bucks anyway. It was $14,000 worth of dissipation. And that was in the form of some gifts made to a lady who he ultimately married. The court ordered repayment of the full amount of the $14,000. And then it ordered that that $14,000 payment be divided differently. It divided it 60% and 40%. 60% to Mrs. Jensen, 40% to Dr. Jensen. When the test is an abuse of discretion, we have to ask ourselves, would a reasonable person have come to the same conclusion? That's really essentially what we have to do. And I respectfully suggest that when we have a 50-50 spread, no change at all when we make it 45 and 55, then we make it 60-40 with no additional evidence, it sounds to me like we're not using discretion at all. It's like the old card game. We'll just see what happens, and that's what we're going to go with. Mr. Sunderman, I hate to interrupt you. But this court asked for supplemental briefing on the issue of jurisdiction. Yes. And to me, I'd like to hear your argument on that, because if that is the case, that we don't have jurisdiction, then we're wasting our time. Yes. I'm glad you asked that question. I was going to take it up last, but I'll take it up now. The issue, the court does have jurisdiction, I'm pretty convinced. Number one, the cases relied upon by my opponent are not like this case. In fact, this case is pretty rare. We have here a case in which the decision was rendered and there was a reservation of maintenance. None of the cases relied upon by Mrs. Jensen are of that type. We have some cited by counsel that relate to, well, they got the divorce done, but they didn't do anything else. Or the DeGuardo case out of Danville that Justice Steinman was on the panel for, the Budweiser distributor over there. DeGuardo, I think it's called. A case where all of the dissolution issues had been resolved, an order had been entered reserving or granting maintenance for a period of five years and then reserving the right to review that issue of maintenance and child support. That's very commonly done. It is. And it's what was done here. This instance, everything was divvied up and the court reserved maintenance. Reserved the issue of maintenance. Reserved the issue of maintenance. Maintenance would even be granted, right? Yes, that's true. That's true. The court found that she was entitled to maintenance, but he was unable to pay at the time and the court reserved it for six months. That's correct. And that's a key because she decided maintenance was appropriate, but didn't issue an order ordering him to pay and he would have continued it to see if he was going to be rehabilitated. And that's really no different than a case where there's a reservation. But nobody asked for a 304A finding or anything, right? No, they did not. They did not. So theoretically then we could decide this case and then when the decision is made about maintenance that could be appealed, we'd have to decide that. That's true in any of those cases. That's true in any of those cases. Even though the issue of the property and maintenance would be quite related. The property distribution versus how much maintenance is given and that type of thing. But that'd be the case no matter what because if this matter is taken up on appeal and resolved one way or another, and if in six months or whatever there's an issue about the amount of the maintenance that's due, that's an appeal anyway. So you are confronted with the possibility of a piecemeal appeal no matter what. I know you don't like it. No, none of us do. But that's still a potential. Or if we wait until there's a decision on the amount of maintenance, then we can decide it all at once. And you eliminate the possibility of piecemeal. If that issue ever comes. There's the possibility that an issue will not arise. Well, I imagine to terminate the litigation, there should be a final decision on the issue of maintenance. Since she found that she's entitled but didn't set an amount. Hypothetically, let's assume in six months Dr. Jensen isn't working and perhaps is unable to be working. What happens then? It goes over another six months or a year. We have cases where maintenance has been set for review in two years. Wouldn't it be fair to say that when you have those cases that really stretch it out farther than six months, then you're dealing with a different animal as far as allowing some resolution on the matters that have been resolved? Madam Justice, that's an appealing argument. But the problem with that analysis is where do you draw the line? Is six months too short and is two years or five years too long? And I don't know how we can find a rule of thumb that would allow us to do that. Well, is there any case that says maintenance is appropriate but I'm not going to impose it now that has been found to be properly before the appellate court? Where there's a specific finding that maintenance is required but he doesn't determine the amount, I've not seen one. I don't think you're likely to. This is an entirely different animal than setting maintenance and saying we'll review it. Is it really? I think so. When the court says this lady is entitled to maintenance but I don't know how much to give her because I don't know whether he's going to be able to pay her or not, is that any different than setting the maintenance at $100 a month and saying we'll see if he gets better and then he can pay more later? I'm not sure it is. It's a discretionary. I thought your point was an excellent one a moment ago. You have to draw a line somewhere, and it seems to me the bright line that best applies is answer the question presented how much before we can say we have a final judgment, even though it might be subject to review in the near future. Or in the alternative, go in and ask the court to give you a 304A finding, right? Is there any reason they couldn't have asked for a 304A finding under these circumstances? I don't know. To be perfectly honest with you, I don't know. I'm guessing, frankly, that that wasn't an issue that was discussed or thought of. But let me get back to the dissipation because I think it's fascinating and it's a de novo kind of thing. The question there is this, and I can't find a case on it either. We can make new law. Here, there was an order entered upon Dr. Jensen to pay X number of dollars a month as I believe unallocated maintenance and child support, and he did. During the time that he was making that payment, he was generous with another lady and bought her presents from money out of his pocket. Is that dissipation? Well, out of the marital pocket, right? They weren't divorced yet. Well, they weren't divorced yet, but an order, a judgment had been entered against him to pay X number of dollars a month, and he was paying that. But does that change what the Illinois Marriage and Dissolution Act says is marital property, monies earned during the marriage, the fact that you're under an order to pay child support or maintenance, does that change? Well, that's what we need to ask ourselves, and that's what we need to answer because the statute doesn't say that. The statute says, yes, money earned during the course of the marriage is marital, but then it talks in terms of dissipation, and the case law on dissipation says you can't waste marital money, and we've got the Macon County case, the old Carter case where the guy had a gambling addiction, and he gambled away the money, mortgaged his interest, and the court said that was dissipation, and it was. They were married during the course of the entire time that conduct took place. We have other cases where dissipation took place in the classic sense that he went to the racetrack or he went to his girlfriend's or he did something with marital money he was earning. But in this case, and it's the only case I can find, we have a court order that separates income so that part, if he's got $10,000 a month in net income, 5,000 of it was hers, 5,000 of it was his. And I would respectfully suggest whatever she did with the money he gave her was hers to spend how she wished. What he had in his pocket was his to spend as he wished as long as he met his court-ordered obligation because a judgment had been entered. And the statute talks in terms of judgments terminating or judgments money paid pursuant to a judgment is non-marital. So your position is that the marital estate had ceased to exist? To the extent? It was now his money and her money? Yes. And there was no longer theirs or dissipation doesn't apply? It doesn't apply as long as he's, remember the evidence was she was spending more than $10,000 a month on her own support. What about an engagement ring for a boyfriend? Well, that's the key right there, Justice. Thank you. I respectfully suggest the trial court may have been offended by his use of his, what I'm going to call non-marital money. And it wasn't well-timed, I have to concede that. But nonetheless, it was his money, and if he wished to spend it that way, that may not be good judgment, but it would appear to me that that touched a nerve with the trial court that is reflected in the division of property. I don't know so much about it being touching a nerve. I think the cases in the past that I've been familiar with have indicated when you're still married and you're spending marital funds on engagement rings for the new girlfriend, that is classified as dissipation. I would agree with you 100 percent, but for the fact that we have a novel twist in this instance, I can't find a single case anywhere. What's the novel twist? The novel twist is he was under an order that he was to pay, there was a judgment and he was going to pay X number of dollars to her. A judgment or a temporary order? Temporary order. It's a temporary order, but I would call that a judgment. But the marital estate continued to exist. It was just not a temporary order. It did. And for instance, he was, what was his practice, a dentist? A dentist. An oral surgeon. An oral surgeon, okay. And during the same time, he received a quarter million dollars worth of a bonus to sign on with Burford Associates in Chicago. That would have been part of the marital estate too, wouldn't it? Yes. So I suppose my point is when you are arguing dissipation, the marriage is a judgment, a dissolution needs to have been entered and the court needs to have concluded that the marital estate is gone. Wow. So if the answer, in other words, the easy answer it seems to me, Mr. Sunderman, would be if that $250,000 didn't belong to the marital estate, then he's free to do with the money the court says is his any way he wants. But if there is a marital estate so that the answer to my question, I think you're right, is $250,000 is the marital estate, then there can still be dissipation. Had he, for instance, taken that $250,000 and bet it on a hot tip on who was going to win the final four, I think the court would have said, I'm sorry, that's dissipation. But if the court had ordered our hypothetical surgeon to pay half of his income to Mrs. Surgeon and he got a $250,000 bonus and he put $125,000 in his own pocket and put $125,000 into Mrs. Surgeon's checking account, might he then reach into his own checking account and buy himself a new? Dissipation still applies because all the order means is that until I further decide how I'm going to divide up all this property, this is what I want you to do with money. But all the normal rules still apply, including you can't destroy the marital estate's funds, which is arguably $10,000 for the new squeezee. That's what it kind of looks like. Well, I would suggest that if that's the law, this is an opportunity for the court to say so because we don't have any case law in the state of Illinois that takes that position. One way or another. I don't mean to imply otherwise. We don't have any law that helps us in that regard and I think it's a novel to no-no question that needs to be addressed. I would hope that you would give a favorable addressment. Of course, we don't. Address it anyway. We haven't seen many cases. I don't know how precedentially important it is. I don't recall, and you've been doing this a long time, Mr. Thotten-Sutherland, have you seen orders of this kind before, this is how money is going to be spent pending dissolution? Probably not too many. I was telling my learned opponent just before you came in, I haven't done a domestic relations case in 25 years or seen any of them, but this is a novel issue. I think it's a fun year, Mr. Thotten-Sutherland. I'm going to get along all right, I think. It just seems to me that it's a novel issue that ought to be addressed and for those reasons, and when you look at the way the assets were divided, assuming we have jurisdiction here, look at the way the assets are divided, it appears to be an abuse of discretion because there's no consistency in it. That's all I have. I'll address any other questions. See you now. Thank you, Counsel. Thank you. Okay, Mr. Furnison. May it please the Court? Counsel? Counsel. Your Honors, I would like to first take up the issue of jurisdiction, and while it is true that the finality of an order is central to the question pursuant to Supreme Court Rules 301 and 303, it is very clear here that a six-month review of maintenance is not a final order. Looking at the 304 question, there has not been a particularized finding that needs to be made to vest the appellate court with jurisdiction. But I think there's also a procedural infirmity that the Court must examine and I think did ask us to examine by way of its docket order, its docket entry concerning the letter. Here we do have five or six important dates. The memorandum opinion, which initially allocated assets after the trial of the matter, was entered 823.11. The order on the second portion of the bifurcated hearing was then entered on 921.11. Mrs. Jensen filed her post-trial motion on December 16th of 11, which resulted in an order regarding the post-trial motion in March of 12. Then we have a notice of appeal, which was filed 416.12. Subsequent to that notice of appeal, we have an amended order on the second portion of the bifurcated proceedings. I point that out because I think it makes it easier and more clear to understand the record. The first order was called an order on the second portion of the bifurcated hearing. The ultimate order of the Court was called an order on the second portion of the bifurcated hearing. Mr. Zunderman indicated he was not trial counsel, were you? I was not, Your Honor. So you don't know whether there was any discussion about 304A finding? I don't believe there was any discussion based on my review of at least our office file. Okay, go ahead. 303A2 has been conveniently ignored by learned counsel. In his supplemental brief, he indicates that a notice of appeal filed after the Court announces a decision but before the entry of a judgment or order is treated as filed on the date and after the entry of the judgment or order. He goes on to completely ignore the second component of that Supreme Court rule, which says a party intending to challenge an order disposing of any post-judgment motion or separate claim or a judgment amended upon such motion, which is what we in fact have here, must file a notice of appeal or an amended notice of appeal within 30 days of the entry of said order or amended judgment. That has simply not been done here. Perhaps that's a procedural quagmire that doesn't merit considerable significance or weight, but I think that to properly vest this Court with appellate jurisdiction, those rules must be followed. He purports to take an appeal of an order that was entered pursuant to the notice of appeal on 321-12. It was truthfully entered on 322-12, but then does not file a supplemental or an amended notice of appeal when the ultimate order disposing, though not finally disposing of the litigation, was then entered. On all three of those rules, on all three of those bases, I believe that this Court lacks jurisdiction to hear the appeal. I'd like to focus then... What's going to happen if we agree with that and dismiss the appeal? The result is the same, I believe, Justice. We're going back to the trial court either way, whether it's Justice Pope's prediction that we need to go back and finally adjudicate the issue of maintenance or whether we go back and retry the entire million-dollar marital estate. This case is headed back to the trial court either which way. But what I think that the trial court would be loathe to do and what I do not believe the record supports this Court doing is disrupting this 55-45% discretionary allocation of the marital property and the marital debt. It is well within the discretion. I've painstakingly detailed each of the elements cited in Section 503 of the Act, and there is ample support within the record of this case to sustain findings as to each of those particular factors. Some, the Court has discretion to place more weight on. Others, the Court has discretion to place less weight on. Whether we look at these factors in isolation or whether we take these factors in tandem, looking at them as a whole, the award of the trial court of a 55-45% split is well within the discretion. It is not a clear abuse of discretion. Reasonable minds, including those on the panel in front of me, can easily come to the same conclusion and to affirm the property disposition in this case. I would submit to the Court most respectfully that this is a fairly modest allocation of assets on some fairly extreme facts. Whether or not we're having nerves touched is beside the point. The allocation is fair. The allocation is equitable. The allocation is in just proportions pursuant to the directive of the statute. And that is true. It is amply supported in the record. Notwithstanding the arguments that the Court failed to consider this or failed to consider that, it's there. The Court doesn't have to make a specific finding as to each of the factors, but the Court does make specific findings as to some of the factors, yet somehow the brief of the appellant suggests otherwise. Of course, this last issue is somewhat puzzling to me. Which last issue? The last issue concerning dissipation. It seems as though the appellant has shifted his argument throughout the course of the briefing and the argument process. But I pose it that this case offers an archetypal example of dissipation of merit. We have a marriage which has remained intact. There's been no judgment dissolving the marriage. There is a temporary order in place which allocates the use of certain income and also allocates the payment of certain expenses and debts. During this period of time, the marriage is clearly, from the record, experiencing an irretrievable breakdown. Dr. Jensen remains married to Mrs. Jensen. He continues to earn income. Dr. Jensen not only gives expensive gifts of jewelry to his paramour and eventual wife, he gives significant cash gifts. Now today, unlike in the reply brief, Mr. Sunderman argues that, well, there is something to do with the definition of marital property here. We are arguing that that is not, in fact, his marital property. But that simply cannot be, Your Honors. Section 503 very clearly and painstakingly indicates that marital property is all the property acquired by the spouses, and Your Honors are very well aware of that, except for certain property which is generated by very specific exceptions. It would be the burden of the appellant to point out specifically which of those exceptions brings his earnings during the course of the marriage, while there is an irretrievable breakdown, outside of that definition. By clear and convincing evidence, in my view, he has not done so. He argues that the court somehow engraft an additional exception into those eight specifically numerated exceptions and create a ninth, which says retained earnings, while we are in the pendency of dissolution proceedings, are not, in fact, marital property. I believe that would be the job for the legislature, and I think that is very important, because to do so would be, in fact, to recognize a common-law dissolution of marriage, which has been rejected by various courts. If we don't recognize common-law marriage, how could it be that we recognize common-law dissolution of marriage? I think if we also look at that statute and those particularly enumerated exceptions, we have got number five, excuse me, number three. It says property acquired by a spouse after a judgment of legal separation. Now we know that this could be very similar. In modern times, when grounds are not as difficult to prove, we don't use the legal separation tool as much. Rather, people are involved in dissolution litigation and live under temporary orders. It does happen every day in my practice. So to suggest that we now engraft a ninth exception, when the legislature is pretty clear that if there would have been a judgment of legal separation, that is something that is similar to the situation at bar, A, is not within the province of the court, B, belies reason, and C, would have the effect of disrupting the entire act. Because one of the most fundamental concepts of this act is how we define and how we then divide marital property. Here, Dr. Jensen's retained earnings during the term of the marriage are marital property. There is no exception to the statute. There is no case law which has been cited by my learned opponent. There has not even been an articulate argument made on that particular point. Indeed, the argument has vacillated through the course of the briefing and oral presentation here today. That marital money was spent on extramarital purposes not related to the marriage for the benefit of one's spouse. That is an archetypal example of dissipation of marital assets, and that finding should quite simply be affirmed by the court. In conclusion here, and I'll allow you all to ask any questions that you may have of me, the jurisdiction of this court is wanting. It's wanting because we do not have a final order in the case. We do not have the specific finding or the specific language under 304, and we've got a procedural error by way of the notice of appeal having been filed prior to the ultimate order of the court. Either way, we look at the court's decision. The court did not clearly abuse its discretion. Any reason, mind, in application of the 12 factors present to the record in this case could find that a 55%, 45% split is well within the discretionary limits of the trial court. Furthermore, this idea that dissipation does not occur, cannot occur, when there's a temporary order in place in the court, is inconsistent with the statute. If it were found to be such, it would disrupt the entire structure of the statute, and that argument should not be countenanced. For the reasons that I've explained, I would respectfully suggest that the amended order on the second portion of the bifurcated proceedings be upheld and affirmed herein, even though what we're really asked to appeal is the Order 3 post-trial. Thank you, counsel. Mr. Sunderman? With respect to the issue of jurisdiction, let me just address the question about 303A2. 303A2 is not designed to take away from 303A1, and I would suggest that 303A1 is the applicable rule. One of the things that I find of interest, actually, is to read the commentary to those Supreme Court rules, particularly the appellate rules. 303 was designed to simplify the old rules, make it clear, make it easy, and make it less arcane, so that I would respectfully suggest that 303A1 applies. It is effective even when... Does that rule really address the issue before us? Is the issue here whether we have a final order or not, about the timing of filing the notice of appeal? I'm only responding to Mr. Perkins' argument. I'm not trying to open another door, but if you wish me to do so, I can say it does not. Finally, with respect to the abuse of discretion question, my issue there rises principally from a decision that says 50-50, a decision with no additional evidence, exhibits, or consideration that says 45-55, a decision by the trial court that says, okay, well, $14,000 will split 60-40. There's an inherent inconsistency in the way the court approached it, in the way the court divvied up the estate, so to speak, so that it appears that no discretion was used. With that, I'll stop. Thank you, counsel. We'll take this matter under advisement and be in recess for a few moments.